# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

DESIGN BASICS, LLC, and
PLAN PROS, INC.,

      Plaintiffs,

v.

J&V ROBERTS INVESTMENTS, INC.,
   D/B/A ROBERTS HOMES & REAL ESTATE,
JAMES A. ROBERTS,
   D/B/A ROBERTS HOMES & REAL ESTATE, and
WILSON MUTUAL INSURANCE COMPANY

      Defendants,

and

ACUITY, A MUTUAL INSURANCE COMPANY,

      Intervenor Defendant.

Case No.:    14 CV 1083

---

## INTERVENOR DEFENDANT, ACUITY, A MUTUAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT / IN THE ALTERNATIVE, DECLARATORY JUDGMENT

## INTRODUCTION

This insurance coverage motion is submitted pursuant to the December 29, 2014 Trial Scheduling Order that requires dispositive motions to be filed by June 1, 2015. As this court is aware, this is a copyright infringement case. Plaintiffs, Design Basics, LLC ("Design Basics") and Plan Pros, Inc. ("Plan Pros;" collectively with Design Basics, "Plaintiffs"), assert that the defendants infringed on their architectural design plans. ACUITY, A Mutual Insurance Company ("ACUITY") is defending defendants, J&V Roberts Investments, Inc. d/b/a Roberts

Homes & Real Estate ("J&V") and James A. Roberts d/b/a Roberts Homes & Real Estate ("Roberts;" together with J&V, "Defendants") under a reservation of rights.

ACUITY moves this Court for summary judgment that it does not have a duty to defend or indemnify the Defendants based on four main reasons: (1) ACUITY's policy provides insurance coverage only for those damages caused by infringement by the Defendants upon another's copyright in their advertisement during the policy period; (2) Only one of the Defendants' eight plans that are the subject of this suit, the Brookhaven plan, allegedly infringes upon another's copyright in the Defendants' advertisement during ACUITY's policy period; (3) the Brookhaven plan was published before the beginning of ACUITY's policy period; and (4) ACUITY's policy excludes insurance coverage for advertising injury arising out of publication of material whose first publication took place before the policy period.

In the alternative, ACUITY requests judgment, declaring: (1) ACUITY's policy provides insurance coverage only for those damages caused by any infringement by the Defendants upon another's copyright in their advertisement during the policy period; and (2) ACUITY would not have to indemnify for any damages awarded for the causes of action based on willful copyright infringement and violation of the Digital Millennium Copyright Act based on the "knowing violation of rights of another" exclusion.

## FACTS

Plaintiffs, Design Basics and Plan Pros, filed a Complaint on September 3, 2014 alleging claims for copyright infringement. (Proposed Findings of Fact ("PFOF") ¶ 1.) Plaintiffs are companies engaged in the business of creating, publishing, and licensing architectural plans and designs. (PFOF ¶ 2.) Plaintiffs claim that Defendants J&V and Roberts committed copyright infringements of Plaintiffs' registered copyrights. (PFOF ¶¶ 5-9.)

2

Plaintiffs' Complaint states four causes of action based on non-willful copyright infringement, four allegations for willful copyright infringement, and one count for violation of the Digital Millennium Copyright Act. (PFOF ¶ 21.) Plaintiffs allege that eight of Defendants' architectural plans infringe on Plaintiffs' copyrights: Design Basic's "Adair" allegedly infringed by Defendants' "Fox Hollow;" Design Basic's "Waverly" allegedly infringed by Defendants' "Wilshire;" Design Basic's "Thomasville" allegedly infringed by Defendants' "River Ridge;" Design Basic's "Millington" allegedly infringed by Defendants' "Pattison;" Design Basic's "Prairie" allegedly infringed by Defendants' "Havenwood;" Design Basic's "Avery" allegedly infringed by Defendants' "Shadow Glen;" Design Basic's "Fenton" allegedly infringed by Defendants' "Brookhaven;" and Plan Pro's "McClover" allegedly infringed by Defendants' "Fairwind." (PFOF ¶ 11.) Plaintiffs allege that Defendants advertised the infringements on Defendants' website. (PFOF ¶ 13.)

Defendants were served with discovery specifically aimed at determining the extent of their advertisements of the allegedly infringing material. Defendants disclosed that they were an authorized dealer of Wausau Homes from 1989 to 2009. (PFOF ¶ 38.) Wausau Homes published the Brookhaven plan in its plan book, *American Dream Two Story Homes*, in 2000. (PFOF ¶ 39.) Defendants then also advertised the Brookhaven home plan on their website starting in 2002.[1] (PFOF ¶ 42.)

Defendants ended their status as a Wausau Homes dealer in 2009. (PFOF ¶ 43.) In 2009, Defendants retained independent contractor architects to design the remaining seven allegedly infringing designs. (PFOF ¶ 44-45.) Defendants advertised the Fox Hollow, Wilshire, River Ridge, Pattison, Havenwood, Shadow Glen, and Fairwind plans on its website beginning in late 2009. (PFOF ¶ 46.)

---

[1] Defendants' website is www.robertshomesandrealestate.com. (PFOF ¶ 41.)

## ACUITY POLICY

ACUITY issued a policy of insurance to "J&V Roberts Inc." that contained Commercial General Liability ("CGL") Forms and Commercial Excess Liability ("Excess") Forms under Policy No. F72223 during the policy terms of: 4/27/01-4/27/02; 4/27/02-4/27/03; 4/27/03-4/27/04; and 4/27/04 to 4/27/05. (PFOF ¶ 22.) ACUITY is currently defending J&V and Roberts under a reservation of rights. (PFOF ¶ 25.) According to the ACUITY CGL Form, "Who is an Insured" for an organization other than a partnership, joint venture or limited liability company is the named insured (J&V Roberts, Inc.), and its executive officers, directors, and shareholders, but only with respect to their duties and liability as such.[2] (PFOF ¶ 26.)

The CGL Forms provided coverage for personal and advertising liability as follows:

**SECTION I – COVERAGES**

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.      Insuring Agreement**

     a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of *personal and advertising injury* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *personal and advertising injury* to which this insurance does not apply. . . .

     b.  This insurance applies to *personal and advertising injury* caused by an offense arising out of your business, **but only if the offense was committed in the *coverage territory* during the policy period.**

---

[2] ACUITY assumes, without conceding, for purposes of this motion that both J&V and Roberts qualify as insureds under the policy. To the extent further discovery reveals facts that prove otherwise, ACUITY will raise such argument with the court in a prompt manner accordingly.

(PFOF ¶ 28, Rice Aff. Exhibit A - ACUITY Policy – CGL Form at 4 of 12; Exhibits B, C, and D,

at 5 of the CGL Form (bold emphasis added).)

The CGL Forms contained the following relevant definitions:

**SECTION V – DEFINITIONS**

1. "*Advertisement*" means a notice that is notice that is broadcast or published to the general public or specific market segments about your goods, products or services for purpose of attracting customers or supporters.

    . . .

14. "*Personal and advertising injury*" means injury, including consequential bodily injury, arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f. The use of another's advertising idea in your advertisement;

    **g. Infringing upon another's copyright, trade dress or slogan in your advertisement.**

(PFOF ¶ ¶ 32, 33, Rice Aff. Ex. A – CGL Form at 11, Exs. B and C – CGL Form at 12-13, Ex. D –

CGL Form at 12-13 (bold emphasis added).)

**Each of the CGL Forms contain a prior publication exclusion that the insurance does not apply to personal and advertising injury "arising out of oral or written publication of material whose first publication took place before the beginning of the policy period."** (PFOF ¶ 30, Rice Aff., Ex. A – CGL Form at 4, Exs. B, C, D – CGL Form at 5 (emphasis added).)

The CGL Forms also contain an exclusion for the "knowing violation of rights of another." The policies do not apply to personal and advertising injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury." (PFOF ¶ 31, Rice Aff. Ex. A – CGL Form at 4; Exs. B, C, D – CGL Form at 5.)

The Commercial General Liability Coverage Forms are listed as an "underlying insurance" to which the Excess Forms apply. (PFOF ¶ 37, Rice Aff. Exs. A, B, C, and D – Excess Liability Coverage Form Declarations.) The Excess Forms contain an insuring agreement that reads as follows:

### SECTION I – COVERAGES

**1.      Insuring Agreement**

a.      We will pay those sums, in excess of the amount payable under the terms of any *underlying insurance*, that the insured becomes legally obligated to pay as damages because of *injury* or damage to which this insurance applies, provided that the *underlying insurance* also applies, or would apply but for the exhaustion of its applicable Limits of Insurance. . . .

b.      We have the right to participate in the investigation or settlement of claims or the defense of the insured against suits seeking damages because of *injury* or damage to which this insurance may apply. . . .

However, we will have no duty to defend the insured against any suit seeking damages for *injury* or damage to which this insurance does not apply.

6

. . .

> d. This insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the *underlying insurance,* except:
>
>> (1) We have no obligation under this insurance with respect to any claim or suit that is settled without our consent; and
>>
>> (2) With respect to any provisions to the contrary contained in this insurance.

(PFOF ¶ 34, Rice Aff. Exs. A, B, C, and D – Excess Liability Coverage Form at 1.)

The Excess Forms also contain the following applicable exclusion:

### SECTION I – COVERAGES

### 2. Exclusions

> The exclusions that apply to the *underlying insurance* apply to this insurance. Also, this insurance does not apply to damages because of:
>
> . . .
>
> h. Any obligation to pay any claim or claims made against you or any of your officers, directors or trustees, individually or collectively, by reason of a wrongful act in their respective capacities as officers, directors or trustees.
>
>> As used in this exclusion, "wrongful act" means any actual or alleged error, misstatement or misleading statement, act or omission, or neglect or breach of duty made or committed by your directors, officers or trustees.

(PFOF ¶ 36, Rice Aff. Exs. A, B, C, and D - Excess Liability Coverage Form at 2.)

## **ARGUMENT**

ACUITY seeks summary judgment, extinguishing its duty to indemnify and therefore, defend with respect to the allegations in this lawsuit. Relevant to this suit, ACUITY's policy provides insurance coverage only for damages caused by infringement by the Defendants upon

another's copyright in the defendants' advertisements during the policy period. Of the eight allegedly infringing plans, only the Brookhaven plan was advertised during ACUITY's policy period. The other plans were not created until years after ACUITY's policy ended and were not advertised until 2009. ACUITY's policy contains a "prior publication" exclusion. Because the Brookhaven plan was first published in a plan book prior to ACUITY's policy period, ACUITY's policy provides no insurance coverage for the allegations in this lawsuit. ACUITY's policy excludes coverage for advertising injury arising out of publication of material whose first publication took place before the policy period.

In the alternative, ACUITY moves this Court for declaratory judgment, declaring that ACUITY's policy provides coverage only for damages caused by any infringement by the Defendants upon Plaintiffs' copyright in their advertisement during the policy period (limiting potential exposure to infringement in the advertisement of the Brookhaven plan). Furthermore, ACUITY seeks a declaration that it would not have to indemnify the Defendants for any damages awarded for the causes of action based upon willful copyright infringement and violation of the Digital Millennium Copyright Act because the "knowing violation of rights of another" exclusion applies.

## I.    STANDARD OF REVIEW

### A.    Summary / Declaratory Judgment Standards

Federal Rule of Civil Procedure 56(a) directs district courts to grant summary judgment if the moving party shows "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." "[S]ummary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Harney v. Speedway*

*Superamerica, LLC.,* 526 F.3d 1099, *1103 (7th Cir. 2008) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, (1986)).   The interpretation of an insurance policy is a question of law.   *Cont'l Corp. v. Aetna Cas. & Sur. Co.,* 892 F.2d 540, 543 (7th Cir. 1989) (citing *Kraemer Bros. v. United States Fire Ins. Co.,* 89 Wis. 2d 555, 278 N.W.2d 857, 860 (1979)); *Folkman v. Quamme,* 264 Wis. 2d 617, 665 N.W.2d 857, 864 (2003).   The nonmoving party bears the burden of showing that a genuine issue of material fact exists.   *Harney,* 526 F.3d at *1104.   Not all factual disputes bar summary judgment; it is only when factual disputes might affect the outcome of the suit under the substantive law that a factual dispute will preclude summary judgment.   *Id.* "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies."   *Id.* "When the moving party has met the standard of Rule 56, summary judgment is mandatory."   *Id.*

Federal Rule of Civil Procedure 57 provides that the civil rules "govern procedure for obtaining a declaratory judgment under 28 U.S.C. §2201.   The Declaratory Judgment Act provides, in relevant part, that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."   28 U.S.C. § 2201(a).   "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."   Fed. R. Civ. P. 57.   The facts relevant to a determination of ACUITY's duty to indemnify are not hypothetical in nature and are undisputed.   There is a substantial controversy between ACUITY and the Defendants that permits the Court to enter into a preliminary declaration defining ACUITY's duty to indemnify for later determination.

**B.      The Duty to Defend and Indemnify**

Insurance policies impart two distinct duties upon insurers.   First, an insurer has the duty to defend its insured when the allegations against the insured may coincide with possible coverage provided by the insurance policy.   *Gen. Cas. Co. of Wisconsin v. Hills,* 209 Wis. 2d 167, 176, 561 N.W.2d 718, 722 (Wis. 1997).   The duty to defend is governed by the allegations of the complaint and the language of the insurance policy.   *Fireman's Fund Ins. Co. of Wisconsin v. Bradley Corp.*, 2003 WI 33, ¶¶ 19-20, 261 Wis. 2d 4.   Additional evidence may also be considered if relevant to the question of coverage.   *Olson v. Farrer*, 2012 WI 3, ¶ 34-38, 338 Wis. 2d 215.

Second, an insurer has a duty to indemnify the insured, but only if the evidence supports such a duty.   The duty to indemnify is narrower than the duty to defend since actual coverage is required (as opposed to arguable coverage) to trigger indemnity.   *See Fireman's Fund Ins. Co. of Wisconsin,* 2003 WI 33, ¶¶ 19-21.   An insurance company that defends an insured is not liable to that insured unless there is, in fact, coverage.   *Baumann v. Elliott,* 2005 WI App 186, ¶¶ 10-11, 25, 286 Wis. 2d 667.   If an insurance carrier elects to defend a case under a reservation of rights and facts are developed that establish no duty to indemnify, the duty to defend is also extinguished. *Id*.   Once an insurer provides an initial defense, it has the opportunity to litigate coverage prior to the underlying liability trial.   *Prof'l Office Bldgs., Inc. v. Royal Indem. Co.*, 145 Wis. 2d 573, 584, 427 N.W.2d 427, 431 (Wis. Ct. App. 1988).   ACUITY, having reserved its rights to contest coverage, has the right to resolve its coverage obligation to the extent it can by motion prior to the trial.

**C.      Insurance Policy Interpretation**

Insurance policy interpretation requires a three-step process.   *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 2004 WI 2, ¶ 24, 268 Wis. 2d 16, ¶ 24, 673 N.W.2d 65, ¶ 24.   First, the court must

examine the facts to determine whether the policy's insuring agreement makes an initial grant of coverage. *Id.* Second, if there is an initial grant of coverage, the court is to examine the exclusions to determine whether any of them preclude coverage. *Id.* Third, the court looks to whether any exceptions to the applicable exclusions reinstate coverage. *Id.*

The insurance policy should be construed so as to give effect to the parties' intentions. *Folkman v. Quamme*, 2003 WI 116, ¶ 12, 264 Wis. 2d 617. "When the terms of an insurance policy are plain on their face, the policy must not be rewritten by construction." *Smith v. Atl. Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597, 599 (Wis. 1990).

## II.     ACUITY HAS NO DUTY TO DEFEND OR INDEMNIFY THE DEFENDANTS.

Following the analysis in *American Girl*, 2004 WI 2, the Court must first consider whether there is an initial grant of coverage under ACUITY's policy. ACUITY will assume without conceding, due to continuing discovery, that there is an initial grant of personal and advertising injury coverage – that ACUITY's policy provides coverage for damages caused by injury arising out of an offense – in this case, copyright infringement in the insured's advertisement – that occurs during the policy period. The Defendants have disclosed that the only allegedly infringing plan that was advertised during the ACUITY policy period is the Brookhaven plan. Moving to the next step of the *American Girl* analysis, ACUITY asserts that the "prior publication" exclusion applies to bar coverage for injury arising out of copyright infringement in the insured's advertisement of the Brookhaven plan. The Brookhaven plan was first published in a plan book prior to ACUITY's policy period. Based on the plain language of ACUITY's policy, there is no coverage and no duty to indemnify.

11

**A.    The initial grant of coverage of ACUITY's policy is limited to injury arising out of copyright infringement in the Defendants' advertisement of the Brookhaven plan.**

ACUITY's policy under which it has issued a reservation of rights to the Defendants commenced on April 27, 2001.  The policy was renewed annually, expiring on April 27, 2005.  ACUITY's policy provides coverage for damages because of "personal and advertising injury."  (PFOF ¶ 28-29.)    As it relates to this suit, the policy defines "personal and advertising injury" as injury arising out of "infringing upon another's copyright . . . in your advertisement."[3]    (PFOF ¶ 32-33, Rice Aff. Ex. A – CGL Form at 11, Exs. B and C – CGL Form at 12-13, Ex. D – CGL Form at 13.)    ACUITY's policy only provides coverage for personal and advertising injury if the offense out of which the injury arose was committed during the policy period.    (PFOF ¶ 28.)

Plaintiffs allege that eight of the Defendants' plans infringe on their copyrights.   It is undisputed that seven of these allegedly infringing plans were first created in 2009, four years after ACUITY's policy was terminated.   (PFOF ¶ 45.)   These seven allegedly infringing plans were also first advertised by the Defendants starting in 2009. [4]   (PFOF ¶ 46.)   The only allegedly infringing plan Defendants advertised during ACUITY's policy period was the Brookhaven plan.  (PFOF ¶ 42.)

The plain language of ACUITY's policy provides coverage only for advertising and personal injury claims that arise out of offenses, such as copyright infringement in the insured's advertisement, during the policy period—between April 27, 2001 and April 27, 2005.  Defendants' advertised only the potentially infringing Brookhaven plan during ACUITY's policy

---

[3] One of the elements of alleging an advertising injury under a CGL policy is causal connection between the injury alleged and the "advertising activity."   *Fireman's Fund Ins. Co. of Wisconsin v. Bradley Corp.,* 2003 WI 33, ¶ 26, 261 Wis. 2d 4.  Discovery continues as to whether a sufficient causal nexus exists and such issue may require determination post-verdict.

[4] These include the Fox Hollow, Wilshire, River Ridge, Pattison, Havenwood, Shadow Glen, and Fairwind plans. (PFOF ¶ 45.)

Case 2:14-cv-01083-JPS   Filed 06/01/15   Page 12 of 21   Document 53

period. Therefore, ACUITY's initial grant of coverage is limited to advertising injury caused by copyright infringement in Defendants' advertisement of the Brookhaven plan from April 27, 2001 to April 27, 2005.

> **B. The "prior publication" exclusion in ACUITY's policy bars coverage of any advertising injury arising out of alleged copyright infringement of the Brookhaven home in Defendants' advertisement.**

If the court finds an initial coverage grant, it must consider whether any of the exclusions in ACUITY's policy apply. ACUITY's policy does not apply to personal and advertising injury "arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." (PFOF ¶ 30, Rice Aff. Exs. A – CGL Form at 4, Exs. B, C, D – CGL Form at 5.) This is commonly known as the "prior publication" exclusion. If the Brookhaven plan was published prior to ACUITY's policy, then the exclusion should apply to bar any arguable coverage for damages caused by injury arising out of the Defendants' alleged copyright infringement of the Brookhaven home in Defendants' advertisement, i.e. the website advertisement of the Brookhaven plan beginning in 2002.

"The duty of a federal court in a diversity suit is to predict what the state's highest court would do if presented with the identical issue." *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004). Wisconsin courts have not interpreted and applied the "prior publication" policy exclusion. Therefore, when there is no case law precedent, Wisconsin courts look to other jurisdictions for persuasive authority. *State v. Frey,* 178 Wis. 2d 729, 740, 505 N.W.2d 786, 790 (Ct. App. 1993).

The "prior publication" exclusion typically "presents a timing issue—whether the material from which the alleged advertising injury offense arises was published before the beginning of the policy period." 6 *McCarthy on Trademarks and Unfair Competition* § 33:15, p. 33-50 (4th ed.).

Courts have held that the "prior publication" exclusion applies to all types of advertising injury, including copyright infringement. *See Tradesoft Technologies, Inc. v. Franklin Mut. Ins. Co.*, 329 N.J. Super. 137, 147, 746 A.2d 1078, 1084 (App. Div. 2000) (applying New Jersey law); *Applied Bolting Technology Products, Inc. v. USF & G*, 942 F.Supp. 1029, 1037 (E.D.Pa. 1996).

The Seventh Circuit has succinctly summarized the background of the "prior publication" exclusion:

> The purpose of the 'prior publication' exclusion (a common clause in liability-insurance contracts, though rarely litigated) can be illustrated most clearly with reference to liability insurance for copyright infringement. Suppose a few months before insurance began on October 7, 1997, the insured published an infringing book that it continued selling after October 6. The 'prior publication' exclusion would bar coverage because the wrongful behavior had begun prior to the effective date of the insurance policy. The purpose of insurance is to spread risk—such as the risk that an advertising campaign might be deemed tortious—and if the risk has already materialized, what is there to insure? The risk has become a certainty.

*Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1072-73 (7th Cir.2004) (internal citation omitted.)

ACUITY's policy language is clear: The policy does not apply to personal and advertising injury "arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." (PFOF ¶ 30, Rice Aff., Ex. A – CGL Form at 4, Exs. B, C, D – CGL Form at 5.) Although Wisconsin courts have not interpreted this specific exclusion, other jurisdictions, including the Seventh Circuit, have found this language clear and unambiguous.

The Seventh Circuit has held that the "prior publication" exclusion policy language was clear and unambiguous so as to preclude coverage.[5]  *Capitol Indem. Corp. v. Elston Self Serv. Wholesale Groceries, Inc.*, 559 F.3d 616, 620 (7th Cir. 2009) (applying Illinois law[6]).  The Ninth Circuit has likewise found that the prior publication exclusion to be clear and explicit.[7]  *United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 777 (9th Cir. 2009) (applying California law).  There, the policy defined "advertising injury," in relevant part, as "injury arising out of ... [i]nfringement of copyright, title or slogan."  *Id.*  The Ninth Circuit held that a plain reading of the "prior publication" exclusion and the advertising injury definition together "indicate[d] that the parties intended to exclude from coverage any copyright infringement injury that arose from an oral or written publication of material first published before the policy became effective."  *Id.*; *see also Street Surfing, LLC v. Great Am. E&S Ins. Co.,* 776 F.3d 603, 605 (9th Cir. 2014) (affirming grant of summary judgment to general liability insurer that it had no duty to defend on the basis that a prior publication exclusion eliminated coverage for an underlying trademark infringement action).

Historically, the most frequently cited case on first publication is *John Deere Insurance Company v. Shamrock Industries, Inc.*, 696 F. Supp. 434 (D. Minn. 1988), *aff'd* 929 F.2d 413 (8th

---

[5] The policy language in *Capitol Indemnity* read: "Insurance does not apply to ... 'advertising injury' [a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period." *Capitol Indem. Corp.*, 559 F.3d at 620.

[6] Illinois law has the same obligations for insurers as Wisconsin:

> "Under Illinois insurance law, an insurer is obligated to defend its insured if the underlying complaint contains allegations that potentially fall within the scope of coverage. In order to determine whether an insurer has a duty to defend its insured, we must compare the allegations in the underlying complaint to the language of the insurance policy.  If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent."

*Capitol Indem. Corp.*, 559 F.3d at 619.

[7] The policy at issue in that case had the following relevant exclusion:  "This insurance does not apply to ... 'advertising injury' ... (2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period."  *Id.*

Cir. 1991). Shamrock commenced an action against several defendants alleging patent infringement, trade secret misappropriation, unfair competition, and contract breach. *Id.* at 435. John Deere refused to accept a tender of defense and requested a declaratory judgment action with respect to coverage. *Id.* The John Deere policy excluded claims for advertising injury "arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." *Id.* at 436-37. The Minnesota federal court held that, once it was definitely established that "advertising activity" occurred before the date of the policy, there would be no coverage under the John Deere policy. *Id.* at 441. *See also Applied Bolting Technology Prod., Inc. v. U.S.F. & G.*, 942 F. Supp. 1029, 1036 (E.D. Pa.1996) (applying Vermont law) (holding that "the 'first publication' date is a landmark.")

Plaintiffs allege copyright infringement of the Brookhaven home by posting of the home plan on Defendants' website. Defendants have confirmed that the Brookhaven home plan was advertised on its website beginning in 2002, when ACUITY's policy was in effect. It is undisputed that the Brookhaven plan was first published in a Wausau Homes plan book in 2000 and used by Wausau Homes dealers, such as the Defendants in this case. (PFOF ¶¶ 39-40.) ACUITY first provided an insurance policy to the Defendants on April 27, 2001. The copyright infringement, the allegedly infringing Brookhaven plan, was published prior to the commencement of ACUITY's policy period. Based on the plain language of the policy, any personal and advertising injury arising out of copyright infringement in the advertisement of the Brookhaven plan is excluded from coverage.

ACUITY respectfully requests summary judgment that ACUITY does not have a duty to indemnify the Defendants for any injury arising out of the Defendants' alleged copyright

infringement of the Brookhaven home in its advertisement during the policy period.  Because there is no duty to indemnify, there can be no duty to defend.[8]

## III.    IN THE ALTERNATIVE, ACUITY DOES NOT HAVE A DUTY TO INDEMNIFY THE DEFENDANTS FOR DAMAGES AWARDED BASED UPON THE CAUSES OF ACTION FOR WILLFUL COPYRIGHT INFRINGEMENT OR VIOLATION OF THE DIGITIAL MILLENNIUM COPYRIGHT ACT.

If the Court determines that the "prior publication" exclusion does not apply, then ACUITY seeks the court to define ACUITY's duty to indemnify given the allegations in the Complaint.   First, as argued above, any initial grant of coverage is limited to injury arising out of copyright infringement involving the Brookhaven plan in Defendants' advertisement.   Second, ACUITY requests a declaration that ACUITY has no duty to indemnify the Defendants for any damages that are awarded based upon the Plaintiffs' causes of action of willful copyright infringement and violation of the Digital Millennium Copyright Act.   ACUITY's "knowing violation of rights of another" exclusion applies to bar coverage for any knowing copyright violations in the Defendants' advertisement.

### A.    The initial grant of coverage is limited to the Brookhaven plan.

As discussed in Section II, A, *supra*, ACUITY's policy started in April 2001 and ended in April 2005.   Plaintiffs allege copyright violations of eight allegedly infringing plans of the Defendants.   Seven of the allegedly infringing plans were created in 2009, and Defendants' first advertisements of those allegedly infringing plans occurred that same year.   The only allegedly infringing plan that was advertised during ACUITY's policy period is the Brookhaven plan. Therefore, under ACUITY's policy, the initial grant of coverage is limited to damages from injury

---

[8] ACUITY's Excess Liability Coverage Forms provide coverage in excess of the amount payable under the terms of any underlying insurance when the insured becomes legally obligated to pay damages because of injury or damage to which the umbrella coverage applies, *provided that the underlying insurance also applies*.   (PFOF ¶ 34, Rice Aff. Ex. A, B, C, D – Excess Form at p. 1.)   Since the underlying insurance (the CGL Form) does not provide coverage for the allegations in the Complaint, the umbrella coverage form does not afford coverage.   The Excess Liability Coverage Form also states that the exclusions that apply to the underlying insurance apply to the umbrella insurance.   (PFOF ¶ 36.)   Thus, the exclusions that preclude coverage under the CGL form also preclude coverage under the umbrella.

arising out of copyright infringement of the Brookhaven plan in the Defendants' advertisement (website).

**B.** **The "knowing violation of rights of another" exclusion applies to bar coverage for allegations of "willful infringement."**

ACUITY's policy excludes coverage for the "knowing violation of rights of another." The exclusion bars coverage for: "Personal and advertising injury caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury." (PFOF ¶ 31.) Wisconsin courts have held that policy language excluding intentional behavior by the insureds do not render the policy "illusory" and should be upheld. *See, e.g., Baumann,* 2005 WI App 186, ¶ 25.

Plaintiffs allege that Defendants "willfully infringed" their copyrights by "scanning, copying, and/or reproducing unauthorized copies;" "by publically displaying unauthorized copies or derivatives on their websites and elsewhere for purposes of advertising and marketing;" "by creating derivatives in the form of two dimensional plans and fully constructed residences;" "and by advertising, marketing, and/or selling one or more houses based upon copies or derivatives of said works."[9] (PFOF ¶¶ 16-19, Doc. 1 ¶¶ 42, 44, 46, 48.) Plaintiffs allege that Mr. Roberts, as a principal or manager of J&V Investments, Inc., had knowledge of the infringing activities and benefited therefrom. (PFOF ¶ 14.) Plaintiffs allege that the Defendants "intentionally removed and omitted the copyright management information before distribution when they knew or had

---

[9] Wisconsin courts have held that:

> The usual meaning assigned to 'wilful,'. . . is that the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow . . . .' This definition requires three elements: (1) an intentional act in the face of (2) a known or obvious risk, with a resulting (3) probability of harm. If any element is missing, the others become irrelevant.

*Hines v. Adams Cnty. Bd.*, 132 Wis. 2d 470, 390 N.W.2d 114 (Ct. App. 1986), *citing Prosser and Keeton on The Law of Torts,* sec. 34 at 213 (5th ed. 1984).

reason to know that such behavior would induce, enable, facilitate, or conceal the infringements."

(PFOF ¶ 20, Doc. 1, ¶¶ 51-33.)

ACUITY acknowledges that the fact finder will have to determine whether Defendants acted "with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury." ACUITY, however, should have no duty to indemnify the Defendants for any damage ultimately awarded for willful copyright infringement and violation of the Digital Millennium Copyright Act in Defendants' advertisement based on the "knowing violation of rights of another" exclusion.

### C.    The principle of fortuity prohibits coverage for allegations of "willful infringement."

In addition to the policy language as cited throughout this brief, ACUITY also relies on the principle of fortuity, which was adopted by the Wisconsin Supreme Court in *Hedtcke v. Sentry Ins. Co.,* 109 Wis. 2d 461, 326 N.W.2d 727 (Wis. 1982), to argue that if Plaintiffs prove Defendants acted willfully, there is no insurance coverage under ACUITY's policies:

> [Under] the "principle of fortuitousness," ... insurance covers fortuitous losses[,] and ... losses are not fortuitous if the damage is intentionally caused by the insured. Even where the insurance policy contains no language expressly stating the principle of fortuitousness, courts read this principle into the insurance policy to further specific public policy objectives including: (1) avoiding profit from wrongdoing; (2) deterring crime; (3) avoiding fraud against insurers; and (4) maintaining coverage of a scope consistent with the reasonable expectations of the contracting parties on matters as to which no intention or expectation was expressed.

*Id.* at 483-84.

The doctrine of fortuity furthers the expectation of the parties as seen through the policy language cited throughout this brief. The Complaint has five causes of action that allege that J&V and Roberts' copyright related infringement violations were willful. (PFOF ¶ 21, Doc. 1, ¶¶ 41-48.) No reasonable insured would believe its business would have personal and advertising

19

injury liability insurance coverage for willful copyright infringement. ACUITY did not agree to provide personal and advertising injury liability coverage for an insured who knowingly violated another's copyright in advertising activity. ACUITY should not be required to indemnify J&V and Roberts for any "personal and advertising injury" that arose from knowing violations of another's copyright.

## CONCLUSION

The Plaintiffs allege copyright infringement based on eight of the Defendants' design plans. ACUITY's policy provides insurance coverage only for those damages caused by infringement by the Defendants upon another's copyright in their advertisement during the policy period. Only one of the allegedly infringing plans—Brookhaven—was advertised during ACUITY's policy period. Therefore, ACUITY's duty to indemnify is limited to the Brookhaven plan. The Brookhaven plan was published prior to the beginning of ACUITY's policy period. Because ACUITY's policy excludes insurance coverage for advertising injury arising out of publication of material whose first publication took place before the policy period, there is no coverage. Without a duty to indemnify the Defendants, ACUITY does not have a duty to defend. *Baumann v. Elliott,* 2005 WI App 186, ¶¶ 10-11, 25, 286 Wis. 2d 667. Therefore, ACUITY requests the Court grant summary judgment that ACUITY has no duty to defend or indemnify J&V and Roberts in this lawsuit.

While it is ACUITY's position that its policy does not provide coverage for any of the Plaintiffs' claims, if the Court finds issues of fact that preclude summary judgment, ACUITY requests relief in the alternative. First, ACUITY seeks a declaration that its duty to indemnify is limited to damages caused by injury arising out of alleged copyright infringement in the Defendants' advertisement of the Brookhaven plan only. Second, ACUITY seeks a declaration

that its duty to indemnify, if applicable, will be limited to damages awarded based on the non-willful copyright violations alleged by the Plaintiffs. Such ruling will assist in defining ACUITY's liability exposure for continuing litigation.

ACUITY further reserves any and all remaining coverage issues that may arise as discovery continues. To that end, ACUITY respectfully requests that the court affirmatively rule that the special verdict utilized at the trial in this matter will contain questions allowing determination post-verdict of those damages which may or may not be covered by the ACUITY policy (ACUITY's duty to indemnify).

Dated this 1st day of June, 2015.

s/Christine M. Rice_____
Christine M. Rice
WI State Bar No. 1055158
Krista G. LaFave Rosolino
WI State Bar No. 1094302
Attorneys for ACUITY, A Mutual Insurance Company
SIMPSON & DEARDORFF, S.C.
311 E. Chicago St., Ste. 410
Post Office Box 2183
Milwaukee, WI 53201-2183
Tel: 414-273-8550
Fax: 414-273-8551
Email: rice@simpsondeardorff.com
Email: rosolino@simpsondeardorff.com