UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

DESIGN BASICS, LLC, and
PLAN PROS, INC.

       Plaintiffs,

      v.                          Case No: 14-CV-1083

J&V ROBERTS INVESTMENTS, INC.,
d/b/a ROBERTS HOMES & REAL ESTATE,
JAMES A. ROBERTS and VICKI ROBERTS,
d/b/a ROBERTS HOMES & REAL ESTATE,
JEFFREY C. ALEXANDER, SANDRA A.
COLWIN, and DEBRA HELLER

       Defendants.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE MOTION FOR SUMMARY
JUDGMENT FILED BY DEFENDANTS J & V ROBERTS**

Plaintiffs, Design Basics, LLC ("DB"), and Plan Pros, Inc., ("PPI") (collectively,

"Plaintiffs"), files this Memorandum in opposition to the motion for summary judgment

filed by Defendants, J & V Roberts Investments, Inc., d/b/a Roberts Homes & Real Estate,

and James A. Roberts, d/b/a Roberts Homes & Real Estate (collectively, "J & V Roberts"

or "Defendants"), and shows:

# I.
# INTRODUCTION

This is a copyright infringement case brought by DB and PPI, two home plan design

companies based in Omaha, Nebraska, against J & V Roberts. DB was one of the first home

plan design companies to market its architectural works through publication and

distribution of plan books nationally (1983). (Plaintiff's Undisputed Fact, "PUF," ¶ 1). Plaintiffs' have residential house plan portfolios numbering in the thousands, and since the advent of the internet, Plaintiffs have become ubiquitous in the home plan business. (PUF ¶ 13).

All Plaintiffs' house plans are registered with the copyright office prior to being actively marketed. (PUF ¶ 5). Among Plaintiff's works are the plans at issue in this case (the "Copyrighted Works"), and consist of DB's "Adair," DB's "Waverly," DB's "Thomasville," DB's "Millington," DB's "Prairie," DB's "Avery," DB's "Fenton," and PPI's "McClover," ( PUF ¶ 5).

On or about September 10, 2011, Plaintiffs first became aware that Defendants had violated their copyrights in several distinct ways. (PUF ¶ 22). Plaintiffs discovered that Defendants had posted infringing copies (the "Accused Works") of each of Plaintiff's Copyrighted Works on Defendants' website for advertising and marketing purposes. (PUF ¶ 10 and ¶ 21). Within three years of discovering Defendants' infringements, Plaintiffs filed the underlying lawsuit alleging violations of the United States Copyright Act and the Digital Millennium Copyright Act.

## II.
## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that "might affect the

outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255; *see Washington Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320,325 (D.C. Cir. 1989).

Where the moving party does not bear the burden of proof on the issue at trial, it may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Additionally, under Rule 56(c), in order to defeat summary judgment dismissing any affirmative defense, Defendants must make a showing sufficient to establish the existence of an element essential to that affirmative defense. *Id.* at 322. If Defendants fail to make this showing, Plaintiff is entitled to judgment as a matter of law. *See Id.* at 323. Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075 (5th Cir. 1994).

### III.
### ARGUMENT

Throughout their Motion, Defendants present many wholly irrelevant assertions which do nothing more than attempt to distract the Court from the true matters at issue in this case. However, when one cuts through these elaborate – yet meritless – arguments, the truth emerges that Plaintiffs, as the owners of the Copyrighted Plans, have valid claims of copyright infringement which must ultimately be decided by a jury.

### A. Defendants' Claims of Independent Creation and Authorization Are Meritless and Have No Bearing on the Plaintiffs' Claims of Copyright Infringement

Defendants initially claim that Plaintiffs cannot prove their case of copyright infringement because Defendants obtained the Accused Works from third party drafters and received a construction license from a company named Wausau Homes. However, in making this this argument, Defendants do not actually claim these eight infringing designs were independently created by Defendants themselves. In fact, Defendants readily admit that the eight infringing home plan designs were neither "designed nor created by J&V Roberts." (PUF ¶ 9). Instead, Defendants claim that seven of the eight Accused Works were created by contractors Steve Chaney and Scott Stelmacher. Then Defendants claim that their "Brookhaven" plan was designed by a third party, "Wausau Homes," and Defendants obtained a license from Wausau.[1] This argument demonstrates Defendants' complete misunderstanding of the fundamental laws of the United States Copyright Act.

Copyright infringement occurs when anyone violates the exclusive rights provided to the copyright owner. See 17 U.S.C § 501(a). Section 106 of the Act sets forth six exclusive rights of copyright – also known as the "bundle of rights" – enjoyed by the copyright holder. *Sony Corp. v. Universal City Studios, Inc.* 464 U.S. 417, 432, 104 S.Ct. 774, 78, see also 17 U.S.C. § 106. These exclusive rights include the right to 1) reproduce the copyrighted work, 2) prepare derivative works based upon the copyrighted work, 3) distribute copies of the copyrighted work, 4) publicly perform the copyrighted work, 5)

---

[1] Interestingly, Defendants do not appear to dispute DB and PPI's clear proof of ownership in any of the works at issue, stating that "[p]laintiffs filed certificates of copyright with their pleadings" and that such constitutes *prime facie* evidence of the copyright's validity. Yet Defendants ignore the fact that any valid license would necessarily have to stem from Plaintiffs – the owners of the copyrighted home plan design.

display the copyrighted work, and 6) in the case of sound recordings, perform such by means of a digital transmission. *Id.* Anyone who violates any of the exclusive rights of the copyright owner ***by unlawfully using or unlawfully authorizing the use of the protected work is an infringer***. *Id.*

DB and PPI own all rights and title in the valid copyrights of the eight home plan designs at issue in this case. (PUF ¶ 3-5 and 8). Plaintiffs have proven this fact by filing the certificates of copyright from the United States Copyright Office, which provides *prime facie* evidence of originality and copyright validity. (PUF ¶ 5 and Exhibit A).[2] Moreover, Defendants make no attempt to dispute this fact. As such, Plaintiffs have the exclusive rights to reproduce, display, distribute, and create three-dimensional structures from all of the Copyrighted Works. (PUF ¶ 8). J & V Roberts did not receive any license and/or authorization from Plaintiffs for the Copyrighted Works. (PUF ¶ 7). Instead, and as shown through the evidence presented in this response, it is the Defendants who have violated DB and PPI's rights by reproducing the home design plans, displaying them on their website, distributing them to their current and potential customers, and constructing three-dimensional derivatives (PUF ¶ 10-11, and Exhibit C). Regardless of any claims made by Defendants that their plans were created by third party drafters, Wausau Homes, or anyone else, nothing can hide the fact that Defendants have invaded Plaintiffs' exclusive rights in the Copyrighted Works, in clear violation of the Copyright Act.

Additionally, even if Defendants' claims were to hold any weight in this matter, the

---

[2] See also, 17 U.S.C. §410(c).

Case 2:14-cv-01083-JPS   Filed 07/06/15   Page 5 of 29   Document 61

evidence presented is not enough to support a ruling on the summary judgment level. Defendants cannot demonstrate the absence of a genuine issue of material fact. Plaintiffs hotly contest Defendants' claim that they did not begin using the Accused Works until 2009 – when Defendants allege they received the works from Steve Chaney and Scott Stelmacher. As will be explained in more detail below, Defendants have been ordering DB's home plan catalogs since the early 2000s. (PUF ¶ 14-15 and Exhibits D and E). Additionally, and of paramount import, **evidence found on the WayBackMachine.com shows that Defendants have been infringing on Plaintiffs' works as early as 2002.** (PUF ¶ 11 and Exhibit C). Thus, even if it were true that Defendants "received" these seven home plan designs from the named independent contractors in 2009, Plaintiffs can prove that Defendants were using the Accused Works long before the alleged "independent creation" by the said third party drafters.

The defense of independent creation cannot stand, because Defendants have openly admitted that they did not create or design the Accused Works. Additionally, because Defendants did not obtain a license or any form of authorization from the undisputed owners of these particular Copyrighted Works, their claim of authorization also fails as a matter of law.

### B. The Evidence Shows All Necessary Elements of Plaintiffs' Claims

Next, Defendants attempt to show that Plaintiffs cannot satisfy the requisite elements to prove their claim of copyright infringement. However, Defendants' arguments

have several fatal flaws.[3]

To prove a claim of copyright infringement, a plaintiff must show two elements: 1) ownership of a valid copyright and 2) copying of constituent elements of the work that are original. *Prestwick Grp., Inc. v. Landmak Studio Ltd.*, 2015 U.S. Dist. LEXIS 65392 (E.D. Wis.), *Hobbs v. John*, 722 F.3d 1089, 1094 (7th Cir.2013). A plaintiff may prove copying by showing that the defendant had the opportunity to copy the original (often called "access") and that the two works are "substantially similar," thus permitting an inference that the defendant actually did copy the original." *Peters v. West*, 692 F.3d 629, 633 (7th Cir.2012).

### 1. There is Abundant Evidence of Access by Defendants

In the copyright context, "access" means merely "an opportunity to view the protected material." *Robert R. Jones Assocs. v. Nino Homes*, 858 F.2d 274, 277 (6th Cir.1988); *Arthur Rutenberg Homes v. Maloney*, 891 F.Supp. 1560, 1567, 36 U.S.P.Q.2d 1336 (D.C. Fl 1995). In the case of architectural works, the access can be to line drawings or derivatives. *Arthur* at 1567. The Defendants, had access to Plaintiffs' copyrighted works because they received dozens of its home plan catalogs, and regularly conducted business with DB over the past 12 years.

In their Motion, Defendants claim that Plaintiffs are not able to establish a clear case of access in order to prove infringement. Defendants claim that they only had a "bare

---

[3] Most egregiously, in an apparent breach of the duty of candor to the tribunal, Defendants omit the most prominent and direct evidence of proof of access -- Design Basics' and Plan Pros' "customer order history" forms showing Defendants' purchases of plan books and other products. These forms have been produced to Defendants.

possibility" to view the plans, and point to case law in the Seventh Circuit which shows that such a "bare possibility" will not satisfy as proof of the element of access. In supporting this notion, Defendants only point to Plaintiffs' assertion that throughout the 1990s DB and PPI regularly and systematically sent out publications containing its house plans, and that since the advent of the internet, Plaintiffs' works have become ubiquitous in the marketplace. Defendants' claim that this alone will not be enough to prove Plaintiffs' claim that Defendants had "access" to their works. However, Defendants conveniently leave out a key piece of evidence – produced to Defendants in discovery – which proves Defendants had access to the works at issue.

In support of Defendants' Motion, Jim Roberts submitted an affidavit to this Court – swearing under oath – that J & V Roberts "never ordered or used any of the plaintiff's house plans or any of the plaintiff's house plan books." (Dkt No. 50, Roberts Affidavit, ¶ 11). However, when viewing the evidence of this case, it is clear that Mr. Roberts' statement is untrue.

In truth, Defendants have been a customer of DB since at least 2003, and have ordered 24 home plan catalogs from DB. (PUF ¶ 14 and Exhibits D and E). This is evidenced by the customer order history documents which Plaintiffs refer to in the Complaint and subsequently produced as part of discovery labeled DBPPI-J&VRoberts 00595 to 00653 (PUF ¶ 14-15 and Exhibits D and E). These documents list the 24 home plan catalogs J & V Roberts ordered from Plaintiffs. (PUF 14 and Exhibits D and E). Moreover, the order history presented in Plaintiffs' Exhibit D clearly displays Defendants name "Roberts Homes," Defendants' principal Jim Rogers, and shows the Defendants'

address, 1235 S. Main St., Fond du Lac, WI 54935. (PUF ¶ 15). Despite this overt evidence to the contrary, Mr. Roberts still denied that J & V Roberts ever ordered or used Plaintiffs' house plan books. This assertion based on what is clearly a false recollection, or at worse false testimony, will not support summary judgment in Defendants' favor.

Further, except for PPI's "McClover" plan, all of the Copyrighted Works are contained within one or more of the publications specifically ordered and received by Defendants. (PUF ¶ 16).[4] This evidence demonstrates that Defendants did not just have a "bare possibility" to view the plans at issue, but actually sought out and received copies of the Copyrighted Works.

Finally, in addition to actual possession of the infringed works to satisfy the access element, a plaintiff may show "opportunity." A copyright plaintiff may show that '(1) the infringed work has been widely-disseminated *or* (2) a particular chain of events exists by which the defendant might have gained access to the work.'" *Tuff 'N' Rumble Management, Inc*., 1997 WL 158364, at *4 (quoting *Favia v. Lyons Parnership*, 1996 WL 194306,*3 (S.D.N.Y. Apr. 23, 1996)). In establishing such a chain of events, "[a]ccess through third parties connected to both a plaintiff and a defendant may be sufficient to prove a defendant's access to a plaintiff's work." *Gaste v. Kaiserman,* 863 F.2d 1061, 1067 (2d Cir. 1998); citing *De Acosta v. Brown*, 146 F.2d 408, 410 (2d Cir.1944); *Tomasini v. Walt Disney Co*. 84 F.Supp.2d 516, 519 (S.D.N.Y., 2000). In the case, *Ronald Mayotte & Associates v. MGC Bldg. Co*., 885 F.Supp. 148, 152 (E.D.Mich. 1994), the court held that

---

[4] PPI's McClover is prominently displayed on several websites, including DB's. Given Defendants' order history with DB, it can be reasonably inferred that Defendants had actual access to this plan also.

Case 2:14-cv-01083-JPS   Filed 07/06/15   Page 9 of 29   Document 61

the defendant had access to protected architectural plans simply because it built houses within 2 miles of plaintiff's homes. In that case, the buildings at issue, including the plaintiff's model home which was regularly opened to the public, were a little more than two miles apart. *Id*. Further, the Plaintiffs distributed sales brochures containing their copyrighted designs, and submitted those designs to the City of Novi. *Id*. The Plaintiffs thereby established the likely existence of access, despite an affidavit of the defendant stating that he never viewed the Plaintiff's plans. *Id*.

Defendants and Plaintiffs have transacted business with each other for the past 12 years. (PUF ¶ 14). DB provided copies of the Copyrighted Works to Defendants through the delivery of 24 home design catalogs. (PUF ¶ 14). Additionally, since the early 1980's, DB has been a major, national publisher of plan catalogs and no-cost, magazine-styled promotional mailers in which its copyrighted works are marketed. (PUF ¶ 1). Since the advent of the internet, DB has marketed its works through the publishing of designs on its website and through its marketing partners, and DB's copyrighted plans have become ubiquitous in the marketplace. (PUF ¶ 12)

While Plaintiffs do bear the burden of proof to show that Defendants had access to the Copyrighted Works, the element of "access" should not be actively contested. In making their assertions, Defendants have purposely excluded the Customer Order History documents which provide clear and direct evidence of Defendants' access. As such, summary judgment cannot be granted in Defendants' favor on this issue.

## 2. The Evidence Shows Substantial Similarity

Next, Defendants attempt to show that, as a matter of law, the Accused Plans are not substantially similar to the Copyrighted Works. In reviewing the designs at issue here, it is important to be mindful that summary judgment is rarely granted on the grounds of substantial similarity. As a general rule, the question of substantial similarity is one for the jury. *Bonner v. Dawson*, 2003 U.S. Dist. LEXIS 19069 (W.D. Va. 2003). Because substantial similarity is a close question of fact, however, summary judgement has traditionally been frowned upon. *Benchmark Homes, Inc. v. Legacy Home Builders, L.L.C.*, 2006 WL 994566, 3 (D.Neb.,2006), citing *Atkins v. Fischer*, 331 F.3d 988, 994 (D.C.Cir.2003). Credibility determinations, weighing of evidence and drawing of legitimate inferences from the facts are jury functions, not those of a judge when ruling on a motion for summary judgment. *Anderson v. Liberty Inc.*, 477 U.S. 242, at 242, 106 S.Ct. 2505, at 2506-2507 91 L.Ed.2d 202 (1986). The issues of copyright infringement and improper appropriation are issues of fact. *Arnstein v. Porter,* 154 F.2d 464 (2nd Cir.1946). Summary judgment in a copyright infringement case should be granted only in the rarest instances. *Reyher v. Childrens Television Workshop*, 377 F.Supp. 411 (S.D.N.Y.1974).

A court may grant summary judgment for the movant in a copyright infringement action only where Ano reasonable jury would find that the two works are substantially similar.@ *Moore v. Columbia Pictures Industries, Inc.,* 972 F.2d 939, 946 (C.A.8 (Minn.),1992), citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ( Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

issue for trial.) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 288, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). **Because substantial similarity is a close question of fact, however, summary judgment has traditionally been frowned upon.** *Benchmark Homes, Inc. v. Legacy Home Builders, L.L.C.,* 2006 WL 994566, 3 (D.Neb., 2006), citing *Atkins v. Fischer,* 331 F.3d 988, 994 (D.C.Cir.2003).

In support of their Motion Defendants have employed the services of Dr. Robert Greenstreet, a professor of architecture, to opine concerning the differences between Plaintiffs' copyright protected works and those at issue in this case. However, in reaching his conclusions Dr. Greenstreet has utilized an improper "deconstruction analysis" which misapplies the law of "substantial similarity" adopted by the Seventh Circuit.

Defendants have performed a rambling analysis to describe each and every minute difference that they claim can be observed between Plaintiffs' Copyrighted Works and the Accused Works, via Dr. Greenstreet's expert's report. Dr. Greenstreet states:

> In addition to differing room dimensions and overall square footage, there are further examples of different design features in each of the sets of drawings compared. These range from differences in the plan layouts, where rooms are in differing juxtapositions to the alleged 'original' …, to variations in overall massing of the homes caused by contrasting roofing configurations …, building footprints and overall different building sizes …. There are many indications of the use of different building materials, particularly on the exteriors of the compared models, which change the appearance of the homes …. In addition, many examples can be found of differing building details, such as windows, porches, garage doors and other details around doors and eaves. . . .

This sort of testimony is exactly what the Seventh Circuit will ***not*** consider in deciding the matter of substantial similarity.

The true test for substantial similarity in the Seventh Circuit is established under the "ordinary observer" test. In the "ordinary observer" test, a court decides "whether the accused work is so similar to the plaintiff's work that an ordinary reasonably person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Incredible Technologies, Inc. v. Virtual Technologies, Inc.*, 400 F.3d 1007, 1011 (7th Cir.2005), (*quoting Atari, Inc. v. North American Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir.1982). Defendants would like the Court to focus only on the differences and disregard the total concept and feel of the works as a whole when comparing Plaintiffs' Copyrighted Works with Defendants' Accused Works. However, the Seventh Circuit has clearly and unequivocally rejected this approach.

In *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931 (7th Cir., 1989), plaintiff was an artist who created a successful line of greeting cards. She sued defendant, a greeting card manufacturer, for creating and selling a similar line of cards which it developed after it quit selling plaintiff's cards under license. A jury found that defendant's line of cards was "substantially similar" to plaintiff's and awarded her damages for copyright infringement. On appeal the defendant argued that the cards were not substantially similar, and took great pains to highlight the differences. The Seventh Circuit rejected defendant's argument.

> In *Atari* this court examined the idea/expression dichotomy in the context of video games to determine which elements of the Pac-Man video game were expression, subject to protection, rather than ideas which are in the public domain. In so doing, this Court stated that dissection of the subject matter into copyrighted and unprotected elements is generally rejected in favor of examining the "total concept and feel" of the copyrighted work. *Atari*, 672 F.2d at 614. The Court cautioned that while such dissection was not

appropriate, the substantial similarity inquiry must "take into account that the copyright laws preclude appropriation of only those elements of the work that are protected by the copyright." Such dissection is inappropriate since the substantial similarity inquiry is conducted from the perspective of the "ordinary observer" who "unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960). *Roulo*, 886 F.2d at p. 939.

Defendants, however, appear to argue that Plaintiffs' works are not entitled to the accepted analysis because they are architectural works which incorporate common design elements into each plan. The Seventh Circuit has also soundly rejected this argument, realizing that copyright protects the selection and arrangement of common elements, and not the individual common elements themselves.

In *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910 (7th Cir., 2007), plaintiff owned the copyright in a plush doll named "Fred." Fred is described as:

> ……. a smiling, black-haired balding Caucasian male, wearing a white tank top and blue pants, reclining in a green armchair, who makes a farting sound, vibrates and utters phrases such as "Did somebody step on a duck?" and "Silent but deadly" after the protruding finger on his right hand is pinched…..*JCW Investments*, 482 F.3d at p. 917.

Defendant created and sold a similar doll called "Fartman." Plaintiff sued for copyright infringement. After trial plaintiff was awarded damages for copyright infringement and unfair competition.[5] On appeal defendant argued that "Fred" was not entitled to copyright protection since it incorporated elements already in the public domain. In rejecting this argument the Seventh Circuit stated:

> It is, of course, a fundamental tenet of copyright law that the idea is not protected, but the original expression of the idea is. See *Feist,* 499 U.S. at

---

[5] *JCW Investments*, 482 F.3d at p. 913

348-49, 111 S.Ct. 1282. Although it is not always easy to distinguish idea from expression, by the same token the task is not always hard. Novelty urges that the similarity of the two dolls reflects the fact that Fred himself is only minimally creative, representing a combination of elements that were in the public domain or were *scènes à faire.* The problem with this argument is that the very combination of these elements as well as the expression that is Fred himself are creative.

Novelty wants us to take the entity that is Fred, subtract each element that it contends is common, and then consider whether Novelty copied whatever leftover components are creative. But this ignores the fact that the details— such as the appearance of Fred's face or even his chair— represent creative expression. It is not the idea of a farting, crude man that is protected, but this particular embodiment of that concept. Novelty could have created another plush doll of a middle-aged farting man that would seem nothing like Fred. He could, for example, have a blond mullet and wear flannel, have a nose that is drawn on rather than protruding substantially from the rest of the head, be standing rather than ensconced in an armchair, and be wearing shorts rather than blue pants. *JCW Investments*, 482 F.3d at p. 917.

Circuits other than the Seventh have also been critical if the *Intervest* decision relied upon by Defendants. Specifically, the Second Circuit court in *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95 (2014) found that there was "little support in the statute for *Intervest*'s use of categories," and the court rejected *Intervest*'s analysis in labeling home plans as "compilations." The *Zalewski* court stated:

> Every kind of work at some level is a compilation, an arrangement of uncopyrightable "common elements." *Id.* No individual word is copyrightable, but the arrangement of words into a book is. No color is copyrightable, but the arrangement of colors on canvas is. Likewise, doors and walls are not copyrightable, but their arrangement in a building is. Some architectural designs, like that of a single-room log cabin, will consist solely of standard features arranged in standard ways; others, like the Guggenheim, will include standard features, but also present something entirely new. **Architecture, in this regard, is like every art form.** *Zalewski* at 103-04.

The Second Circuit concluded that "[c]ourts should treat architectural copyrights no different than other copyrights. This is what Congress envisioned, and it is an approach we have employed before. *Id*. at 104.

Additionally, even if the Court could consider a substantial similarity issue on summary judgement, the evidence does not support a finding as a matter of law that Defendants' Accused Works are not substantially similar. Plaintiffs have provided evidence which describes all of the similarities between each of the Plaintiffs' Copyrighted Works and Defendants' Accused Works. (PUF ¶ 18). Plaintiffs' employee Carl Cuozzo has opined that the works at issue are substantially similar in too many ways to have been the product of independent creation. (PUF ¶ 19). Mr. Cuozzo opined that the plans at issue are substantially similar because the overall flow and location of rooms, hallways, bathrooms, access points and closets are substantially similar in both plans. (PUF ¶ 20). The fact that a room is a little larger or smaller, a roof is configured differently, or a builder utilized different building materials does not take away from the fact that the Accused Works and Copyrighted Works are substantially similar in the overall design of the flow of the floor plans. (PUF ¶ 20). Substantial similarity is particularly obvious when one compares elevation drawings for the protected works and accused plans. Upon viewing the evidence, it is clear that the plans are sufficiently similar to warrant a finding of copyright infringement. Defendants' argument does not support summary judgment in their favor.

### C. Plaintiffs' Claims Were Brought Within the Requisite Period Under the Law of the Seventh Circuit

Finally, in support of their Motion, Defendants submit an extensive statutory analysis of the rule of accrual under the Copyright Act. In fact, the bulk of Defendants' Motion is dedicated to debunking the long-established rule of the Seventh Circuit that a copyright claim begins to accrue when a plaintiff discovers the infringement, or when a plaintiff reasonably should have discovered the infringement. This argument fails for several reasons. First, because Defendants' concealed their infringing activity, the doctrine of equitable tolling applies and Plaintiffs' cannot be barred. Additionally, Plaintiffs filed suit within three years of discovering the infringements, and despite Defendants' assertion, the Seventh Circuit applies the "discovery rule" of accrual for claims brought under the Copyright Act.

#### 1. Plaintiffs' Claims Were Tolled by the Doctrine of Equitable Tolling

The manner in which the Defendants infringed the Copyrighted Works made discovery nearly impossible. Plaintiffs only discovered the Defendants' infringing activity through happenstance. Plaintiffs' first became aware of Defendants' infringing activity on September 10, 2011, when one of its employees, Carl Cuozzo, saw house plans posted on the J & V Roberts website, www.robertshomesandrealestate.com, in a link to J & V Roberts' *Floor Plan Book*. (PUF ¶ 10 and 22, and Exhibit G). Defendants posted these plans with Defendants' logo, "Roberts Homes and Real Estate" prominently displayed in the upper-left corner of each plan page. (PUF ¶ 23). Additionally, the last page of J & V Roberts' *Floor Plan Book* bore the notation "All Plans in this book are the property of

Roberts Homes, Custom View Design, and Stelmacher Architecture and are copyrighted as such." (PUF ¶ 24).

All of the works contained within Plaintiffs' home design catalogs, as well as all the works contained on Plaintiffs' website, http://www.designbasics.com, display Plaintiffs' copyright management information, ensuring that all customers and potential customers know that Plaintiffs' own all rights and title to their copyrighted plans. (PUF ¶ 17). However, Plaintiffs' copyright management information ("CMI") had been removed from all of the works Defendants' posted on the J & V Roberts' website. (PUF ¶ 22). When Defendants removed this information and replaced it with Defendants' own CMI, no one, including Plaintiffs, had the ability to appreciate Defendants' infringing activity unless such was found by happenstance. Consequently, Plaintiffs were only able to identify these works as infringements through the keen eye of Mr. Cuozzo and the good fortune that he came upon Defendants' website on that particular day.

The doctrine of equitable tolling has long been recognized by the Supreme Court and is applied in situations such as presented in the case at bar to extend the time in which a copyright owner has to bring suit for concealed infringements, later discovered.

As early as 1946 the U.S. Supreme Court firmly established the doctrine of equitable tolling.

> ……. And so this Court long ago adopted as its own the old chancery rule that where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.' *Bailey v. Glover*, 21 Wall. 342, 348, 22 L.Ed. 636; and *see Exploration Co. v. United States*, 247

Case 2:14-cv-01083-JPS   Filed 07/06/15   Page 18 of 29   Document 61

U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200; *Sherwood v. Sutton*, Fed.Cas.No.12,782, 5 Mason 143.

This equitable doctrine is read into every federal statute of limitation. *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 90 L.Ed. 743, 66 S.Ct. 582 (1946).

The Supreme Court reaffirmed the application of this equitable doctrine in 2002 and again in 2014.

It is hornbook law that limitations periods are "customarily subject to 'equitable tolling,'" *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990), unless tolling would be "inconsistent with the text of the relevant statute," *United States v. Beggerly*, 524 U.S. 38, 48 (1998). See also *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 558-559 (1974); Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946); *Bailey v. Glover*, 21 Wall. 342, 349-350 (1875). **Congress must be presumed to draft limitations periods in light of this background principle**. *Cf. National Private Truck Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 589-590 (1995); *United States v. Shabani*, 513 U.S. 10, 13 (1994). (Emphasis added). *Young v. United States*, 535 U.S. 43, 49, 50 (2002).

In 2014, the Supreme Court confirmed the continued applicability of the doctrine of equitable tolling in the very case Defendants cite in support of their stance that the limitations period has run – *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. __, 134 S.Ct. 1962, 188 L.Ed.2d 979 (2014). In *Petrella*, the Court determined when and under what circumstances an infringer may raise laches and an affirmative defense to a copyright infringement claim. In doing so, the court recognized that equitable tolling (the reverse side of the coin from laches) was available to extend the time during which a copyright owner may bring suit for copyright infringement.

MGM contends that laches, like equitable tolling, should be "read into every federal statute of limitation," *Holmberg*, 327 U.S., at 397, 66 S.Ct. 582. However, tolling lengthens the time for commencing a civil action where

there is a statute of limitations and is, in effect, a rule of interpretation tied to that statutory limit. See, e.g., *Young v. United States*, 535 U.S. 43, 49-50, 122 S.Ct. 1036, 152 L.Ed.2d 79. In contrast, laches, which originally served as a guide when no statute of limitations controlled, can scarcely be described as a rule for interpreting a statutory prescription. *Petrella*, 134 S.Ct. at p. 1965.

The Seventh Circuit applied equitable tolling in the copyright context as early as 1983. In *Taylor v. Meirick*, 712 f.2d 1112 (1983), Taylor created copyright protected maps beginning in 1974, which he registered with the U.S. Copyright Office. Meirick copied Taylor's maps in 1976 and 1977, and sold them to dealers after removing Taylor's copyright notices and replacing them with notices in which he claimed copyright ownership. Taylor did not discover Meirick's duplicity until 1979, and did not filed suit for copyright infringement until 1980.

Meirick argued that some or all of Taylor's infringement claims against him were barred by the Copyright Act's three year statute of limitations. Taylor parried that the statute of limitations did not bar his claims since either the doctrine of equitable tolling suspended the limitations period, or the continuing tort doctrine allowed a reach-back beyond the limitations period.

The Seventh Circuit held that either equitable principle allowed Taylor to proceed with his infringement claims against Meirick, in toto. The court held that, "there is no doubt that the copyright statute of limitations is tolled by 'fraudulent concealment' of the infringement." *Id.* at 1117. See also, e.g., *Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338, 340-41 (5th Cir.1971); *Charlotte Telecasters, Inc. v. Jerfferrson-Pilot Corp.*, 546 F.2d 570, 573-74 (4th Cir.1976). Moreover, the Seventh Circuit found the continuing tort doctrine also assisted *Taylor*, concluding:

Alternatively, since Taylor was unaware of the infringements until 1979, and (in part because of Meirick's efforts at concealment) could not have been expected to discover them earlier by the exercise of reasonable vigilance, either of the tolling principles discussed earlier would allow him to collect damages for acts of infringement more than three years in the past, at least if he acted promptly once he discovered them, and he did. Taylor, 712 F.2d at pp. 1119.

Like *Meirick*, J & V Roberts attempted to conceal their infringing activity by removing Plaintiffs' CMI from the infringing plans and replacing it with their own. Despite what the Defendants might claim, Plaintiffs' primary business is the creation and sale of house plans, not investigating potential infringers of its works. (PUF ¶ 1-2). Plaintiffs were not able to discover that Defendants had infringed on the Copyrighted Works until Mr. Cuozzo happened to come upon the J & V Roberts website. Thus, because of the application of the doctrine of equitable tolling, none of Plaintiffs' claims are barred by the Copyright Act's three year statute of limitations.

### 2. The Seventh Circuit Applies the Discovery Rule to § 507(b)

Even if the equitable tolling did not apply in this case, Plaintiffs brought their claims within the Copyright Act's three year statute of limitations period. The Copyright Act's statute of limitations provides: "No civil action shall be maintained under the provision of this title unless it is commenced within three years after the claim accrued." 17 U.S.C § 507(b) (emphasis added).[6] Defendants' argument for the Injury rule – whereby the statute of limitations begins to run the instant an infringement has occurred – fails because "accrued" and "occurred" are not interchangeable. Nowhere does the Copyright Act state

---

[6] The statute does not define accrual, leaving courts to interpret the statute and decide how to apply the Copyright Act's statute of limitations.

Case 2:14-cv-01083-JPS   Filed 07/06/15   Page 21 of 29   Document 61

that claims accrue when the infringement *occurs*; yet this conflation serves as the cornerstone for Defendants' statute of limitations defense.

While Defendants efforts may supply an interesting point of view for an academic journal, their argument holds no weight for the case at hand. No matter how much Defendants feel the discovery rule of accrual is against the intent of the lawmakers who developed the Copyright Act so many years ago, it will not change the fact that the Seventh Circuit interprets section 507(b) to mean that the copyright statute of limitations starts to run when the plaintiff learns, or should as a reasonable person have learned that the defendant was violating his rights. *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004) (citing *Taylor v. Merick*, 712 F.2d 1112, 1117 (7th Cir. 1983)). The question of whether the "discovery rule" or the "injury rule" applies to determine when a civil cause of action accrues under the Copyright Act is a legal one. Under the discovery rule, a "cause of action accrues 'when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.'" Id.

The Defendants base this entire argument on two sentences of dicta contained in the Supreme Court case *Petrella v. Metro-Goldwyn-Mayer, Inc.* The holding in *Petrella* is that laches does not bar a copyright infringement claim filed within the three-year limitations period of § 507(b). *Petrella*, 134 S.Ct.1962, 188 L.Ed.2d 979 (2014). The opinion itself provides no analysis on the interpretation of accrual versus the injury rule, and specifically declines to rule on that issue. However, according to Defendants, the Supreme Court, in this decision about laches, adopted the "injury" rule for Copyright cases, abrogating the very case Justice Ginsburg cites in footnote four of the *Petrella* opinion:

Although we have not passed on the question, nine Courts of Appeals have adopted, as an alternative to the incident of injury rule, a "discovery rule," which starts the limitations period when "the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." *William A. Graham Co. v. Haughey*, 568 F.3d 425, 433 (C.A.3 2009). (internal quotation marks omitted). See also 6 W. Patry, Copyright § 20:19, p. 20-28 (2013) (hereinafter Patry) ("The overwhelming majority of courts use discovery accrual in copyright cases.") (emphasis added). *Id*. at *6 n.4.

Despite Defendants' contrary claim, *Petrella* does not adopt the injury rule, which would require reversing all nine circuits that have adopted the discovery rule for copyright claims. **(See Appendix A).** Specifically, the Seventh Circuit in *Gaiman v. McFarlane* held: "...the copyright statute of limitations starts to run when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights..." *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004).

### 3. *Taylor v. Meirick* Provides Deep Analysis of the Discovery Rule

The Defendants also attempt to discredit 30 years of case law in the Seventh Circuit by claiming that a close reading of *Taylor v. Meirick*, 712 F.2d 1112 (7th Cir. 1983) reveals that the *Taylor* court did not apply appropriate methodologies of statutory construction, did not truly adopt the discovery rule, and that its discussion of the discovery rule is mere *dicta*.

Defendants argue that, because *Taylor* does not apply heavy statutory analysis or legislative intent regarding the discovery rule, this court must follow the injury rule. While the Defendants point to a few cases which do perform heavy analysis of Congress' intent, such is not required for a trial court to apply the discovery rule. Canons of statutory interpretation are mere guides that need not be conclusive, and are not mandatory rules. *Chickasaw Nation v. United States*, 534 U.S. 84, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001).

Even should a court not rigorously follow the canons of statutory interpretation, the trial court's ruling remains law. *Id.*

It is also true that in *Taylor*, the issue does not completely turn on accrual because the defendant had been conducting infringing activities within a year of the suit being filed. *Id.* at 1117. However, the court delves deep into an analysis of tolling when the plaintiff does *not* know of the infringement. The court states, "Often, whether or not the defendant has done anything to conceal from the plaintiff the existence of the cause of action, the statute of limitations is tolled until the plaintiff learned or by reasonable diligence could have learned that he had a cause of action." Id. The court then goes on to analogize the issue with that of liability for defective products, stating,

> . . . although the tort is complete when the victim is injured, if the etiology of the injury is mysterious – as is often the case with injuries from drugs and chemicals – the tendency in modern law is to toll the statute of limitations until the victim could reasonably have discovered the cause of his woe." *Id.*

Similarly, the *Taylor* court suggests copyright infringement is not always easily discoverable.

> "The fact that a publisher loses sales to a competitor is not in itself a clue to copyright infringement, since there is vigorous competition among copyrighted works. So we doubt that every time the sales of a publication dip, the publisher must, to preserve his right to sue for copyright infringement, examine all of his competitors' publications to make sure none is infringing any of his copyrights. Probably it should be enough to toll the statute of limitations that a reasonable man would not have discovered the infringement …." *Id* at 1118.

It is this analysis and logic that is behind every opinion in the Seventh Circuit where Courts have applied the discovery rule of accrual in Copyright cases.

Section 507(b) of the Copyright Act provides that "no civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." (See, e.g., *Taylor v. Meirick*, 712 F.2d 1112, 1117 (7th Cir. 1983)). This concept of when a claim "accrues" was amplified in the Seventh Circuit case *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990):

> Accrual is the date on which the statute of limitations begins to run. It is not the date on which the wrong that injures the plaintiff occurs, but the date – often the same, but sometimes later – on which the plaintiff discovers that he has been injured. The rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured is the "discovery rule" of federal common law, which is read into statutes of limitations in federal-question cases (even when those statutes of limitations are borrowed from state law) in the absence of contrary directive from Congress. *Id.*

Defendants cite extensive portions of the case *Auscape Intern. v. Nat'l Geographic Soc.*, 409 F. Supp. 2d 235 (S.D. N.Y. 2004) to support the notion that Congress did not intend for a discovery rule of accrual to apply in the copyright context. However, *Auscape* is a decision from a district court from the Second Circuit, and is not binding precedent on this court. *Cada v. Baxter Healthcare Corp.*, on the other hand, **is the law in the Seventh Circuit**, and specifically and unequivocally applies the discovery rule of accrual, "in the absence of contrary directive from Congress." *Cada* at 450.

### 4. Seventh Circuit Applies Discovery Rule Despite *Petrella's* Dicta

Defendants fail to mention that since the Supreme Court issued the *Petrella opinion*, trial courts in the Seventh Circuit also have continued to apply the discovery rule. In *Frerck v. Pearson Educ., Inc.*, 2014 U.S. Dist. LEXIS 1111562 (N.D. Ill. Aug. 11, 2014), the

Northern District of Illinois specifically declined to follow the injury rule of accrual, even while recognizing the Supreme Court's *dicta* in *Petrella*. The *Frerck* court wrote:

> In *Petrella v. Metro-Goldwyn-Mayer, Inc*., U.S. , 134 S. Ct. 1962, 188 L. Ed. 2d 979 (2014), the Supreme Court said "[a] copyright claim . . . arises or 'accrue[s]' when an infringing act occurs." 134 S. Ct. at 1969. Defendant takes this to mean that I should not apply the discovery rule in this case. Dkt. 138 at 1-2, Defendant's Notice of Supplemental Authority. I disagree. In *Petrella*, the Supreme Court explicitly said it was not passing on the question of the "nine Courts of Appeals [who] have adopted, as an alternative to the incident of injury rule, a 'discovery rule,' which starts the limitations period when 'the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.'" Id. at 1969 n. 4. Since the Court did not take up this issue — and because I am bound to follow Seventh Circuit precedent — I will continue to apply the discovery rule (Emphasis added). *Frerck v. Pearson Educ., Inc*., 2014 U.S. Dist. LEXIS 111562, 8-9 n.3 (N.D. Ill. Aug. 11, 2014).

Additionally, in *Frerck v. John Wiley & Sons, Inc.*, --- F.Supp.2d ---, 2014 WL 3512991 (N.D.Ill July 14, 2014), while acknowledging *Petrella*, the court stated, "This Court cannot conclude that a comment in a footnote overrules the standard in nearly every circuit in the country, including the Seventh Circuit." *Frerck v. John Wiley & Sons, Inc.*, --- F.Supp.2d ---, 2014 WL 3512991, *6n.5 (N.D.Ill July 14, 2014).

Most recently, Judge Randa of the Eastern District of Wisconsin held that the discovery rule applies to copyright claims in the case of *Design Basics v. Campbellsport Bldg Supply*, Eastern District of Wisconsin Case No. 2:13-cv-560. In this case the *Campbellsport* Defendants – just as Defendants have here – suggested the Court follow *Petrella*'s dicta as well as adopt the *Campbellsport* Defendants' complex statutory analysis. In holding for the Plaintiff's on this matter, Judge Randa stated, "[g]iven the controlling case law of the Seventh Circuit Court of Appeals which is in accord with that

of eight other courts of appeals, the Court declines the Defendants' invitation to delve into statutory interpretation."[7] In their Motion, Defendants make a note that the *Campbellsport* Defendants moved to add a 28 U.S.C. § 1292(b) certification for immediate appeal to Judge Randa's Decision and Order, and that the 1292(b) Motion was currently pending. However, since Defendants filed their Motion for Summary Judgment, Judge Randa ruled on this motion ***denying*** the certification for immediate appeal, and stating, "there is not a *substantial* ground for a difference of opinion. Seventh Circuit case law applies the 'discovery rule,' which tolls the accrual date for the copyright statute of limitations until 'the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights.'"[8]

Thus in the Seventh Circuit, as in many other Circuits, the "discovery rule" still applies to the Copyright Act statute of limitations. *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004). ("The copyright sol is tolled until -- and only begins running -- when the plaintiff learns, or as a reasonable person *should have learned,* that the defendant was violating his rights.").

Under the law, Plaintiffs had three years from the date they first learned of the infringement to file suit. Plaintiffs first became aware the Defendants were infringing its copyrighted works on September 10, 2011, and filed suit within the required three year statute of limitation on September 3, 2014. The Defendants cannot produce any evidence

---

[7] See *Design Basics v. Campbellsport Bldg Supply*, Eastern District of Wisconsin Case No. 2:13-cv-560 [Dkt No. 98, p. 46]
[8] See *Design Basics v. Campbellsport Bldg Supply*, Eastern District of Wisconsin Case No. 2:13-cv-560 [Dkt No. 113, p. 3-4 (citing *Taylor* at 1117)]

showing Plaintiffs discovered the Defendants' infringements more than three years before filing suit. The Defendants' entire motion is based on flawed logic, a misunderstanding of *Petrella*, and a misapplication of the Copyright Act's statute of limitations.

## IV.
## CONCLUSION

Defendants have invaded Plaintiffs' exclusive rights in the Copyrighted Works in clear violations of the law under the Copyright Act. Defendants' meritless claims of independent creation and authorized use do not change this clear fact.

Additionally, Plaintiffs have conclusively established the requisite elements of claim for copyright infringement in all eight (8) of the Copyrighted Works. Defendant has failed to produce sufficient evidence to rebut the elements of access and substantial similarity.

Finally, claims for copyright infringement accrue when the infringements were discovered, as the Seventh Circuit has always found. As such, Plaintiffs timely filed their Complaint on September 3, 2014. Plaintiffs' claims are not time-barred.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs DB and PPI pray that this Court DENY Defendants' Motion for Summary judgment as set forth above, and for such and other relief as it may be entitled.

Dated this July 6, 2015.

LEJUNE LAW FIRM

By:    *s/Dana A. LeJune*
Dana A. LeJune
Texas Bar No.: 12188250
email: dlejune@triallawyers.net

Case 2:14-cv-01083-JPS   Filed 07/06/15   Page 28 of 29   Document 61

6525 Washington Avenue
Suite 300
Houston, Texas 77007
713/942.9898 Telephone
713/942.9899 Facsimile

and

HOPKINS McCARTHY LLC

By:   *s/Michael T. Hopkins*
Michael T. Hopkins
SBN: 1014792
email: mth@hmclaw.com
757 N. Broadway, Suite 201
Milwaukee, WI 53202
Tel/Fax: 866-735-0515
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2015, I forwarded the foregoing instrument to all opposing parties.

*s/Dana A. LeJune*